UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HERITAGE BANK USA, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 3:15-cv-0696 |
| | ) Judge Aleta A. Trauger |
| RUFUS S. JOHNSON, III, | ) |
| Defendant. | ) |

## MEMORANDUM

The plaintiff Heritage Bank USA, Inc. ("Heritage") has filed a Motion for Summary Judgment (Docket No. 25), to which the defendant Rufus S. Johnson, III ("Johnson") has filed a Response in opposition (Docket No. 20), and Heritage has filed a Reply (Docket No. 22). For the following reasons, the motion will be granted.

## FACTS AND PROCEDURAL BACKGROUND

This is an action to enforce alleged obligations under notes and a guaranty executed by Johnson.[1] Heritage is a Kentucky State Chartered Commercial Bank with a principal place of business in Hopkinsonville, Kentucky. Johnson is a resident of the state of Tennessee.

On August 31, 2009, Johnson and Elaina V. Johnson ("Ms. Johnson") executed a promissory note in the original principal amount of $1,037,203.11 payable to Heritage ("Mobile Home Park Note"). The Mobile Home Park Note was given in exchange for Heritage's

---

[1] Facts are drawn from Heritage's Statement of Undisputed Material Facts (Docket No. 14.) Johnson has not responded to this filing, thereby conceding that these facts are undisputed for purposes of the instant motion.

1

assignment to the Johnsons of a promissory note executed by William J. Kennedy and David J. Kennedy on July 14, 2006 in favor of Heritage in the principal amount of $1,080,000.00 (the "Kennedy Note") and a deed of trust securing the Kennedy Note of record in Volume 1112, Page 1681, Register's Office, Montgomery County, Tennessee (the "Kennedy Deed of Trust"). The Johnsons then assigned the Kennedy Note and the Kennedy Deed of Trust to Heritage to secure their obligations under the Mobile Home Park Note.

On July 23, 2010, Heritage made a loan to Johnson and Ms. Johnson in the original principal amount of $39,568.49 evidenced by a promissory note of the same date (the "Jim Thorpe Drive Note").

On July 29, 2010, Heritage made a loan to Johnson and Ms. Johnson, in the original principal amount of $39,594.37 evidenced by a promissory note of the same date (the "Gracey Avenue Note").

On September 26, 2011, Heritage made a loan to Johnson and Ms. Johnson in the original principal amount of $1,080,145.00 evidenced by an adjustable rate note of the same date (the "Memorial Drive Note").

On September 3, 2013, Heritage and Ms. Johnson executed a promissory note in the original principal amount of $985,615.75 (the "Lawrence County Note"). This note was a renewal of a promissory note dated July 29, 2011 evidencing a loan by Heritage to Mr. Johnson in the original principal amount of $1,000,000.00. The proceeds of the original Lawrence County Note were used by Ms. Johnson to purchase certain property owned by Heritage in Lawrence County, Tennessee.

On September 3, 2013, Heritage made a loan to Ms. Johnson in the original principal

amount of $983,286.14 evidenced by a promissory note of the same date (the "Warren County Note"). The Warren County Note is a renewal of a prior loan to Ms. Johnson evidenced by promissory note dated July 29, 2011 in the original principal amount of $1,049,577.40.

On February 27, 2015, Heritage, Chester Daniel Price and Ms. Johnson executed a renewal and replacement promissory note in the original principal amount of $140,172.73 (the "Dover Road Note"). The Dover Road Note was a renewal of a prior loan to Price and Ms. Johnson evidenced by a promissory note dated July 29, 2011 in the original principal amount of $3,343,200.00.

Heritage is the holder of the Mobile Home Park Note, Jim Thorpe Drive Note, Gracey Avenue Note, Memorial Drive Note, Lawrence County Note, Warren County Note and Dover Road Note (collectively, "Notes").

On July 29, 2011, Johnson executed a guaranty ("Guaranty") in favor of Heritage. In the Guaranty, Johnson absolutely and unconditionally guaranteed and promised to pay Heritage any and all liabilities of Ms. Johnson. Johnson's obligations under the Guaranty were continuing and unlimited.

In February 2014, Johnson and his "soon to be estranged" wife, Ms. Johnson, both filed for divorce. (Docket No. 20 at pp. 1-2.)

As of March 31, 2014, various obligations owed by Johnson or Ms. Johnson were in default. Pursuant to the loan documents governing the Notes and Guaranty, Heritage had the right to declare defaults and exercise available rights and remedies. On that date, Heritage entered into a forbearance agreement with the Johnsons in which Heritage agreed to forbear from exercising certain rights and remedies pursuant to certain conditions of forbearance (the

"Forbearance Agreement"). In the Forbearance Agreement, the Johnsons acknowledged their defaults and Heritage's legal right to exercise its available rights and remedies. In Paragraph One of the Forbearance Agreement, Heritage agreed to forbear from pursuing remedies under the Notes, lien instruments and loan documents until August 31, 2014, or the occurrence of a default, whichever occurred first. In turn, the Johnsons acknowledged their liability under the Notes and Guaranty, acknowledged that they had no claims of any kind against Heritage and, to the extent that claims did exist, released them in exchange for Heritage's forbearance. In the Forbearance Agreement, the Johnsons (1) represented, acknowledged and agreed with Heritage that the loan documents governing their obligations to Heritage were valid, legally binding, and enforceable obligations, that the Johnsons released Heritage from any and all claims predating the Forbearance Agreement; (2) expressly agreed that they would never sue Heritage in connection with the loans; and (3) expressly acknowledged that they had no defense, set off claim, counter-claim, or cause of action of any kind with respect to the obligations under the Notes or Guaranty.

Johnson specifically represented in the Forbearance Agreement that he had the opportunity to engage independent counsel to advise him in connection with the execution of the Forbearance Agreement. Johnson was in fact represented by counsel in connection with negotiation of the Forbearance Agreement; Roger Manness, Johnson's counsel of record in the present action, notarized Mr. Johnson's execution of the Forbearance Agreement.

On June 23, 2015, Heritage gave written notice of default by mail to Johnson and Ms. Johnson. As of August 31, 2015: (1) the balance owed under the Memorial Drive Note was $1,100,638.27, plus attorney's fees and expenses; (2) the balance owed under the Mobile Home

4

Park Note was $834,902.68, plus attorney's fees and expenses; (3) the balance owed under the Dover Road Note was $142,760.81, plus attorney's fees and expenses; (4) the balance owed under the Warren County Note was $911,878.82, plus attorney's fees and expenses; (5) the balance owed under the Lawrence County Note was $1,026,680.68, plus attorney's fees and expenses; (6) the principal balance owed under the Jim Thorpe Drive Note was $35,415.22, plus attorney's fees and expenses; and (7) the principal balance owed under the Gracey Avenue Note was $35,546.65, plus attorney's fees and expenses.

On June 23, 2015, Heritage filed the Complaint (Docket No. 1), which Johnson answered on August 10, 2015 (Docket No. 9). The Complaint includes causes of action for breach of the Notes and breach of the Guaranty. Heritage seeks judgment against Johnson for (1) all balances due, (2) accrued interest, (3) late charges, and (4) accrued expenses of collection including attorney's fees and costs.

Heritage filed its Motion for Summary Judgment on September 9, 2015. (Docket No. 12.) On October 23, 2015, Johnson filed his Response. (Docket No. 20.) On October 28, 2015, Heritage filed its Reply. (Docket No. 22.)

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of*

5

*Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Heritage asserts that, following default on the various obligations discussed *supra*, Heritage refrained from exercising its right to enforce the obligations and instead entered into a Forbearance Agreement with the Johnsons in which Heritage agreed to forbear to allow the Johnsons additional time to restructure their finances and repay their indebtedness. In exchange for Heritage's agreement to forbear, the Johnsons specifically released Heritage from any claims relating to the indebtedness and waived any defenses, including any defenses that Johnson might have under the Notes or his Guaranty. After the Johnsons failed to repay the indebtedness after the expiration of the Forbearance Agreement, Heritage filed this action to enforce the Notes and the Guaranty. Heritage contends that all defenses to its action, including any general denials or affirmative defenses to the Complaint, were expressly waived in the Forbearance Agreement. As

6

a result, Heritage contends that this court need not reach the merits of the any defenses Johnson may set forth because they have been clearly and unequivocally waived and released. Heritage maintains, therefore, that no genuine issues of material fact are in dispute and it is entitled to judgment in its favor as a matter of law.

To this end, Heritage argues, with extensive legal support, that: (1) the Notes and Guaranty are unambiguous and must be enforced according to their plain and ordinary meaning under Tennessee law; (2) the Forbearance Agreement is unambiguous and must be enforced according to its terms; and (3) the release in the Forbearance Agreement bars several affirmative defenses asserted by Johnson in the Answer that arose before the Forbearance Agreement was executed on March 31, 2014.[2] (Docket No. 13 at pp. 8-11.) Specifically, Heritage points to the fact that, in the Forbearance Agreement, Johnson, in clear and unambiguous terms: (1)

---

[2] Johnson has asserted affirmative defenses arising from transactions that occurred well before the execution of the forbearance agreement in 2014. First, Johnson asserts two affirmative defenses related to the July 29, 2011 transactions in which (1) Ms. Johnson purchased property from Heritage financed by the Lawrence County Note and (2) Heritage made the Warren County Note to Ms. Johnson to refinance existing indebtedness she owed to another lender. Johnson first claims that Heritage violated the Bank Holding Company Act, 12 U.S.C. § 1972, by illegally "tying" the two transactions together. Stated differently, Johnson claims that Heritage conditioned its agreement to make the Warren County Loan on Ms. Johnson's agreement to purchase from Heritage the property in Lawrence County then owed by Heritage. Johnson also claims that in connection with this same transaction, Heritage fraudulently induced Ms. Johnson's purchase of the property from Heritage by promising to loan her money to make repairs on the property she was purchasing from Heritage. The second affirmative defense asserted by Johnson arises from the Mobile Home Park Note. In that transaction, Ms. Johnson received an assignment of a note and deed of trust from a third party, the Kennedys, that was financed by a loan from Heritage. Johnson claims that, in connection with this transaction, Heritage knew or should have known that the Kennedys, who were also borrowers from Heritage, had engaged in fraudulent and deceptive practices in the business and banking activities of the mobile home park and, in particular, in the Kennedys' banking activities with Heritage. Johnson alleged that Heritage had a duty to disclose these alleged fraudulent activities of the Kennedys and that the bank's failure to disclose constituted fraud.

7

acknowledged that the loan documents were enforceable against him in accordance with their terms (Docket No. 15-9, Ex. 3, ¶ 3(c)); (2) released Heritage from any and all claims (*id*., ¶ 3(d)); (3) promised not to sue Heritage in connection with the loans (*id*. ¶ 3(d)); and (4) acknowledged the lack of any defense or claims against Heritage with respect to the loans (*id*. ¶ 3(e)).

In the Response, Johnson does not deny the material facts as set forth herein, admits entering into the Forbearance Agreement, and does not claim that the Forbearance Agreement is unenforceable. (*See generally* Docket No. 20.) Rather, Johnson seeks an additional period of discovery before adjudication of the pending Motion for Summary Judgment against him. Johnson claims that, in discovery in the divorce case, in late 2014, he came across two notarized business documents purportedly signed by Ms. Johnson and himself in 2013. However, Johnson does not recall signing the documents and believes that they are forgeries. Johnson states that "[f]urther investigation after this civil [action] was filed, has lead [sic] [Johnson] to conclude that some, but not all, of the obligation documents (notes and guaranties) that are attached to the complaint were not signed by him, but were, in fact, forged by his estranged wife, Elaina Johnson, and presented to [Heritage] for notarization." (*Id*. at p. 2.) Johnson contends that he "was not fully aware of the probability that Elaina Johnson had forged his signature on the documents referenced above when he signed the Forbearance Agreement on which [Heritage's] Motion for Summary Judgment is based." (*Id*. at p. 3.) Johnson argues only that "[a] period of discovery is needed, during which, [Johnson] can ascertain through examination of the relevant documents whether he in fact signed those documents or whether his signature was forged by his now estranged wife, Elaina Johnson, and presented to [Heritage]." (*Id*.)

Johnson's opposition to the pending motion is not based on Fed. R. Civ. P. 56(c)(1)(A)

(*i.e.*, an attempt to demonstrate, through affidavits or otherwise, the existence of a genuine issue of material fact)[3] or Fed. R. Civ. P. 56(c)(1)(B) (*i.e.*, an attempt to challenge the sufficiency of the moving party's evidence and demonstrate that the material facts cited in support of the moving party's motion do not establish the absence of a genuine dispute).[4]  Rather, Johnson's opposition is premised upon (although Johnson cites no rules or caselaw) Fed. R. Civ. P. 56(d), which sets forth the method for opposing summary judgment based on insufficiency of discovery.  Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*.

Johnson, however, fails to articulate why he needs additional time for discovery.  Johnson asserts that he now suspects that his signature may have been forged on some of the operative documents at issue in this case.  Johnson states in his Affidavit that "[a] reasonable period of discovery is needed during which my lawyer and I can ascertain through examination of the relevant documents whether I, in fact, signed those documents or whether those documents were forged by my now estranged wife, Elaina Johnson, and the documents were then presented to [Heritage] by her." (Docket No. 21-1 at p. 3.)  But the documents in question are the loan documents attached to Heritage's Complaint, which Johnson had possessed for four months prior to the filing of the Response.  Johnson offers no explanation as to why he needs additional time

---

[3] Johnson did not respond to Heritage's Statement of Undisputed Material Facts.

[4] In the Response brief, Johnson did not challenge the sufficiency of the proof adduced by Heritage in support of the Motion for Summary Judgment.

to review his signatures thereupon. Johnson also does not identify any other discovery beyond these documents that he would seek to gather or review in the additional "reasonable period of discovery" he seeks. Such a broad request is insufficient; a party pursuing additional discovery under Rule 56(d) must describe it with specificity. *Schaffer v. A.O. Smith Harvest Store Prods.*, 74 F.3d 722, 732 (6th Cir. 1996).

Johnson's substantive argument concerning the forged documents is unpersuasive as well. Johnson does not establish how proof that Ms. Johnson forged two documents during an unrelated 2013 incident creates a genuine issue of material fact as to whether she forged Johnson's signature on other documents years earlier before the Johnsons' marriage fell into discord. Johnson's explanation that he "was not fully aware of the probability that Elaina Johnson had forged her [sic] signature on the [2013] documents [ ] when [he] signed the Forbearance Agreement" provides no justification for ignoring that agreement.[5] Although Johnson may not have been fully aware of his wife's conduct in 2013, that has no relevance to Johnson's own actions prior to or after 2013. Johnson signed a valid and enforceable Forbearance Agreement in 2014 and the Notes years earlier, in 2009 and 2011. The alleged 2013 forgeries do not offer a credible defense to his admitted liabilities.

For these reasons, the court will deny Johnson's request for relief under Fed. R. Civ. P. 56(d) and grant Heritage's Motion for Summary Judgment.

## **CONCLUSION**

Heritage's Motion for Summary Judgment (Docket No. 12 ) will be granted.

---

[5] As Heritage correctly points out, Johnson does not allege that the Forbearance Agreement was the result of fraud or mutual mistake, or that it is ambiguous. (Docket No. 22 at p. 5.)

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge