UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HERITAGE BANK USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 3:15-cv-0696 |
| | ) Judge Aleta A. Trauger |
| | ) |
| RUFUS S. JOHNSON, III, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

The plaintiff Heritage Bank USA, Inc. ("Heritage") has filed a Motion for Award of Attorneys' Fees (Docket No. 26) pursuant to Local Rule 54.01(b)(1), to which the defendant Rufus S. Johnson, III ("Johnson") has filed a Response in partial opposition (Docket No. 33), and Heritage has filed a Reply (Docket No. 36). For the following reasons, the motion will be granted.

On June 23, 2015, Heritage filed a Complaint against Johnson seeking to recover obligations under (a) seven separate Notes executed by Johnson or his ex-wife ("Mrs. Johnson") and (b) a Guaranty under which Johnson guaranteed all of the obligations of Mrs. Johnson to Heritage. (Docket No. 1.) On September 9, 2015, Heritage filed a Motion for Summary Judgment seeking judgment equal to the outstanding balance of the Notes plus post-judgment interest and costs of collection, including attorney's fees. (Docket No. 13.) On November 30, 2015, this court entered a Memorandum (Docket No. 23) and Order (Docket No. 24) granting the Motion for Summary Judgment. On December 17, 2015, this court entered a Corrected

1

Memorandum Opinion (Docket No. 30) and Corrected Order (Docket No. 31) incorporating additional post-judgment interest. Judgment was entered on December 22, 2015. (Docket No. 32.)

On December 11, 2015, Heritage filed the instant motion. (Docket No. 26). The motion was supported by a declaration of counsel setting forth the attorney's fees purportedly incurred by Heritage in connection with the enforcement of the Notes and Guaranty at issue. (Docket No. 26-1). The fees and expenses sought by Heritage – a total of $121,578.25 – included not only fees and expenses incurred in the prosecution of the present action, but also fees and expenses incurred to enforce the Notes against Mrs. Johnson in a bankruptcy case filed by her. Indeed, those fees and expenses account for the majority of fees and expenses sought. Apparently disturbed by the amount of fees requested, Johnson asked Heritage for a further breakdown of the attorney's fees. After receiving this, on January 4, 2016, Johnson filed a response to the motion. (Docket No. 33.) In his response, Johnson insists that he should only be responsible for the fees and expenses incurred directly in litigation of the Complaint in the present action and that he should not be liable for the attorney's fees and expenses incurred by Heritage in enforcing the Notes against Mrs. Johnson in her bankruptcy. Johnson argues that "the Court should [only] award attorney['s] fees to plaintiff against defendant in an amount consistent with the fees that were reasonably incurred by the plaintiff for the purpose of enforcing defendant's [G]uaranty. That amount is apparently $31,570.50." (*Id.*, ¶ 4.) Johnson further argues that Heritage's motion failed to comply with Local Rule 54.01(b)(3).

On January 15, 2016, Heritage filed its Reply. (Docket No. 36.) Heritage reminds the court that four of the Notes (Mobile Home Park Note, Jim Thorpe Drive Note, Gracey Avenue

Note, and Memorial Drive Note) were executed by Johnson and three (Lawrence County Note, Warren County Note, and Dover Road Note) were not – the latter group being the indebtedness of Mrs. Johnson. Each of the Notes contain similar reasonable attorney's fees provisions related to enforcement. (*See* Docket Nos. 15-1, 1-5-2, 15-3, 15-4, 15-5, 15-6, 15-7). More importantly, however, the Guaranty executed by Johnson covered all of the "Indebtedness" of Mrs. Johnson, which is a term defined as broadly as possible: it is "used in its most comprehensive sense and means and includes any and all of [b]orrower's liabilities, obligations, debts, and indebtedness to lender… including, without limitation, all loans, advances, interests, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of borrower, or any of them…" (Docket No. 15-8 at p. 1.) In turn, the Guaranty specifically included all attorney's fees and expenses incurred while enforcing the guaranteed Indebtedness, whether inside or outside of bankruptcy proceedings: "Guarantor agrees to pay upon demand all of lender's costs and expenses, including attorney's fees and lender's legal expenses, incurred in connection with the enforcement of the Guaranty. . . . Costs and expenses include lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings . . . appeals, and any anticipated post-judgment collection services. Guarantor shall also pay all court costs and such additional fees as may be directed by the court." (*Id*. at p. 3.)

Put simply, as the court has previously found, the Guaranty obligates Johnson to the full extent that the Notes obligate Mrs. Johnson. *See, e.g., Third Nat'l Bank v. Azalea City Motels, Inc.*, No. 01A01-9011CH00420, 1991 WL 148027, \*16-17 (Tenn. Ct. App. Aug. 7, 1991) (noting that "the liability of the guarantor under a continuing guaranty is measured by the liability

of the principal obligor" and holding the guarantor liable for attorney's fees and expenses incurred in protection of collateral on loan) (quoting *Clemmer v. Farmers-Peoples Bank*, 548 S.W.2d 661 (Tenn. Ct. App. 1976)). Because both the Notes and Guaranty expressly provide for attorney's fees necessitated by enforcement – including in bankruptcy proceedings – Johnson has no basis upon which to limit his express contractual liability for those fees. Johnson is therefore responsible for all reasonable attorney's fees incurred by Heritage in connection with enforcement of the seven Notes and the Guaranty, whether those actions were taken in Mrs. Johnson's bankruptcy or finally before this court.

The two cases cited by Johnson in the Response do not support his position. In *Crossville, Inc. v. Kemper Design Ctr., Inc.*, 758 F.Supp.2d 517 (M.D. Tenn. 2010), there was a note and a desire by one debtor/guarantor to execute a subsequent note for increased indebtedness. Certain other individual guarantors had refused to execute new guarantees for the second note. After finding that the guarantors were not liable for the increased indebtedness under the second note, the court considered attorney's fees. The court held that, because the first debtor had admitted its liability, "making litigation against the company unnecessary," the debtor should not be liable for attorney's fees incurred in the bank's attempts to enforce the guaranties against the other guarantors. 758 F. Supp. 2d at 532. However, this does not support Johnson's argument that he is not liable for attorney's fees incurred to enforce the Notes against Mrs. Johnson (in or out of bankruptcy), all of which he personally guaranteed.

In *J&B Investments, LLC v. Surti*, 258 S.W.3d 127 (Tenn. Ct. App. 2008), the plaintiff's attorney's fee request included fees related to two other actions among the parties (a usury action and a tort action), in addition to an action upon an express guaranty. The court reiterated the

settled principle that a creditor's entitlement to recover attorney's fees is "limited to the situation agreed by the parties in the contract." 258 S.W.3d at 138. The court then held that the plaintiff was not entitled to recover fees for the two other actions that were not expressly related to the guaranty action before the court. *See id*. at 139 ("The Guaranty Agreements do not afford Plaintiff the right to recover costs incurred in a separate action unrelated to the enforcement of the Guaranty Agreements.") Here, however, the Guaranty provides that Heritage may recover attorney's fees in connection with bankruptcy proceedings. This situation is therefore not analogous to that in *J&B Investments*, and Heritage seeks no more than what is expressly allowed under the Guaranty.

In sum, therefore, the fees and expenses sought by Heritage are within the attorney's fees provisions that Johnson (and Mrs. Johnson) executed, in both the Notes and the Guaranty, establishing both direct and guaranty liability therefor. Johnson is, accordingly, liable for all of the attorney's fees and expenses sought by Heritage.[1]

In his response, Johnson does not object to the reasonableness of Heritage's requested attorney's fees. Nevertheless, the court has reviewed it. Where, as here, a contract provides for reasonable attorney's fees and costs, "[t]he parties are entitled to have their contract enforced according to its express terms." *Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). The Tennessee Supreme Court has noted that the appropriate factors to consider in determining a reasonable attorney's fee include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service

---

[1] The court is satisfied that Heritage has complied with Local Rule 54.01(b)(3) via the filings the parties have presented. (*See* Docket No. 36 at pp. 6-7.)

properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent;

(9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) Whether the fee agreement is in writing.

*Wright ex. rel. Wright v. Wright*, 337 S.W.3d 166, 176-77 (Tenn. 2011); *see also* Tennessee Rule of Professional Conduct ("RPC") 1.5. These factors are not exclusive and each factor may not be relevant to every case. RPC 1.5, cmt. 1. Moreover, while a review of these factors should guide a court's analysis, "ultimately[,] the reasonableness of the fee must be based upon the particular circumstances of the individual case." *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996) (citing *Hail v. Nashville Trust Co.*, 212 S.W.2d 51 (Tenn. Ct. App. 1948)).

Here, Heritage's counsel successfully secured a judgment in the amount of $4,158,646.68 against Johnson and defended part of the assets underlying that judgment against a collateral bankruptcy proceeding. These efforts required professional experience and expertise, as well as

the expenditure of time and effort. Heritage's counsel has submitted a breakdown of its services that the court has reviewed and finds to be reasonable. This breakdown lists the services of six attorneys for a total of 339.75 hours; two of these attorneys contributed less than two hours each. In reality, therefore, Heritage's counsel staffed this matter with four counsel over time. Two of these attorneys worked less than forty hours each over the life of the matter, while the other two carried the laboring oar and worked over seventy-five hours each. The four attorneys who spent significant time working on this matter billed at rates from $195.00 per hour to $470.00 per hour. The court finds these to have been reasonable rates for the location, type, and complexity of representation involved. The total bill for services rendered is $121,578.25. Based on its evaluation of the record, the court will grant this request in its entirety. The court will also grant Heritage's detailed request for $3,732.00 in reimbursable legal expenses.

## CONCLUSION

Heritage's Motion for Award of Attorneys' Fees (Docket No. 26) is **GRANTED**.

Heritage is awarded $125,310.25 in attorney's fees and expenses against Johnson.

It is so **ORDERED**.

Enter this 4th day of February 2016.

ALETA A. TRAUGER
United States District Judge